**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HENRY PIMENTEL | : | Case No. 3:19-CV-1284 (OAW) |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| ATRIUM HOSPITALITY LP | : | |
| *Defendant* | : | |
| | : | SEPTEMBER 7, 2022 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Henry Pimentel ("Chef Pimentel" or "Plaintiff") brings this action against his former employer, Atrium Hospitality LP ("Atrium"), alleging that he was subjected to a hostile work environment and retaliation in violation of Title VII. Chef Pimentel worked for Atrium as an Executive Chef at the Hilton Stamford. He alleges that, during his employment, several of his supervisors sexually harassed him and Atrium retaliated against him after he reported the harassment. Atrium has moved for summary judgment on the grounds that the undisputed facts do not give rise to actionable claims under Title VII for either a hostile work environment or retaliation.

For the reasons stated herein, the court grants in part and denies in part Atrium's motion for summary judgment. The court **GRANTS** the motion with respect to Plaintiff's retaliation claim. The court also **GRANTS** the motion with respect to the hostile work environment claim arising from the alleged misconduct by Jerry Sadutto. However, the court permits Plaintiff to **PROCEED** on his hostile work environment claim with respect to the alleged misconduct by Sam Schwartz. Within 14 days of this ruling, the parties shall file a joint status report indicating the following:

- The estimated length of trial;

1

- Whether the parties are interested in a referral to a United States Magistrate Judge for a settlement conference.

After receiving the parties' joint status report, the court will refer the case to a Magistrate Judge as requested or, in the alternative, schedule the matter for trial and issue instructions and deadlines for the joint trial memorandum and all remaining pretrial motions.

I.     BACKGROUND

As an initial matter, the court recognizes that Plaintiff's Statement of Facts in Opposition to Summary Judgment does not comply with Local Rule 56(a)3, because it fails to include citations to the record for each fact denied in Atrium's statement of undisputed and material facts. *See* ECF No. 63-3; Local Rule 56(a)3 ("Each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."). The court ordered Plaintiff to file a revised statement with citations, which Plaintiff provided. *See* ECF No. 70. Atrium seeks leave to file a sur-reply brief stating that Plaintiff's revised statement still fails to comply with Local Rule 56(a). Mot. for Leave, ECF No. 71. The court denies the motion as unnecessary. Although Plaintiff has not conformed to Local Rule 56(a) with exact specificity (such as reproducing each and every fact listed in Atrium's statement of material facts), Plaintiff's revised statement includes citations and otherwise is sufficient for purposes of the court's review. To the extent that Plaintiff has again failed to provide any citations to the record, the court will deem admitted Atrium's facts which are supported by the evidence, as permitted

under Local Rule 56(a)3.  The following facts are taken primarily from the parties' Local Rule 56(a) Statements of Undisputed Facts.  *See* Def.'s L.R. 56(a)(1) Stmt., ECF No. 54-2 ("Def. Stmt."); Pl.'s L.R. 56(a)(2) Stmt., ECF No. 70 ("Pl. Stmt.").  All ambiguities in the record are construed in Plaintiff's favor.   All facts are undisputed, unless indicated otherwise:

Defendant Atrium is a hotel and asset management company headquartered in Georgia.  Def. Stmt. at ¶ 1.  The company's portfolio includes 84 properties in 29 states and employs approximately 3,500 employees.  *Id.*  Atrium owns and operates the Hilton Stamford located in Stamford, Connecticut.  *Id.* at ¶ 2.

On or about June 27, 2016, Atrium hired Plaintiff Henry Pimentel as the Executive Chef for the Stamford Hilton.  *Id.* at ¶ 3.  Chef Pimentel was responsible for overseeing the hotel's day-to-day culinary operations as the highest-ranking supervisor assigned to the kitchen.  *Id.* at 4.  Chef Pimentel initially reported to Atrium's Food & Beverage ("F&B") Director, Jerry Sadutto ("Mr. Sadutto"), and later to Mr. Sadutto's replacement, Sam Schwartz ("Mr. Schwartz").   *Id.* at ¶¶ 6, 26.   In turn, the F&B Director reported to the General Manager of the Stamford Hilton, Robert Langevin ("Mr. Langevin") and later, Ted McCallum ("Mr. McCallum").  *Id.* at ¶¶ 6, 27.

On April 6, 2017, Mr. Sadutto issued Chef Pimentel a verbal warning for swearing during a conversation regarding a complaint about food quality.  *Id.* at ¶ 12.  On August 16, 2017, Mr. Sadutto issued Chef Pimentel his annual performance review with an overall rating of "Meets Expectations."  *Id.* at ¶ 13; Performance Review, ECF No. 54-4 at p. 258–260.

On September 11, 2017, there was a meeting arranged by human resources manager Juenara Washington ("Ms. Washington") to address a scheduling disagreement between Chef Pimentel and Mr. Sadutto that had escalated into inappropriate swearing. Am. Compl. at First Count ¶ 14.  At the meeting, Chef Pimentel reported to Atrium that in late August or September of 2017, Mr. Sadutto approached him and attempted to insert a cucumber between his buttocks (over his clothes).  *Id.* at ¶ 3(b).  The parties disagree as to whether the cucumber incident occurred.  Def. Memo. of Law in Support of Mot. for Summary Judgment ("Def. MSJ Memo"), ECF No. 54-1, at 2 ("Atrium investigated, but could not substantiate the allegation"); *see also* Atrium Investigation Summary, Exhibit G, ECF No. 54-3 at 41.  As a result of the meeting, Atrium issued Chef Pimentel a written warning for using inappropriate language toward Mr. Sadutto during the incident that was the intended focus of the HR meeting.  Def. Stmt. at ¶ 14.

On December 11, 2017, Atrium received a letter from Chef Pimentel's attorney, Ridgely Brown, which contained certain allegations concerning Mr. Sadutto.  *Id.* at ¶ 17. In addition to the cucumber incident, the letter alleged that Mr. Sadutto had made snide references to Latinos and the country's border walls.  ECF No. 54-4 at p. 281.  On December 12, 2017, Atrium received another letter from Chef Pimentel's attorney.  *Id.* at 285.  The letter stated that Mr. Sadutto referred to Chef Pimentel as "sweetheart" during a work meeting.  *Id.* The very next day, on December 13, a human resources meeting was held among Ms. Washington, Chef Pimentel, Mr. Sadutto, Mr. Langevin (the General Manager of the Stamford Hilton), and Atrium's Vice President of Operations Peter Komar ("Mr. Komar").  Def.'s Stmt. at ¶ 18.  During this meeting, Chef Pimentel reported that Mr. Sadutto had called him a "sweetheart" in a prior meeting.  *Id.*  Following the December

4

13 meeting, Ms. Washington suspended Mr. Sadutto pending Atrium's investigation into the allegations contained in Attorney Brown's letters. *Id.* at ¶ 19.

Ms. Washington investigated the allegations against Mr. Sadutto and prepared a report and recommendation dated January 10, 2018. *Id.* at ¶¶ 20–21; Atrium Investigation Summary, Exhibit G, ECF No. 54-3. Atrium could not substantiate the allegations of sexual harassment and discriminatory language, but nevertheless found that Mr. Sadutto engaged in inappropriate conduct. Def. Stmt. at ¶¶ 20–21. Atrium terminated Mr. Sadutto on January 23, 2018 and conducted mandatory anti-harassment training for all supervisors. *Id.* at ¶¶ 22–23.

On January 16, 2018 (after Ms. Washington's report and recommendation but before Atrium's termination of Mr. Sadutto), Chef Pimentel received a written warning for unsatisfactory job performance. *Id.* at ¶ 24. An audit revealed that Hilton Stamford's kitchen housed more than $8,000 of expired product that needed to be discarded. *Id.* Chef Pimentel disagrees with the warning and alleges that the food already had arrived with a short expiration date, but that Atrium refused to send it back. Pimentel Dep., 138:10–19. Two days after the expired food warning, Chef Pimentel received a verbal warning because he failed to complete annual performance reviews for his kitchen staff before his established deadline. Def. Stmt. at ¶ 25.

On March 29, 2018, Chef Pimentel filed a charge against Atrium with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging sexual harassment based on Mr. Sadutto's conduct.

On May 17, 2018, a customer alleged that he became sick after eating food from Pimentel's kitchen. *Id.* at ¶ 30. On May 21, 2018, Hilton Stamford's new General

Manager, Mr. McCallum, informed Chef Pimentel that his kitchen failed a food safety inspection that was conducted by an independent third-party food safety auditor.  ECF No. 54-6 at p. 8–10; Pimentel Dep., 148:2–10; Def. Stmt. at ¶¶ 28–29.  On June 4, 2018, Atrium was required to issue a $3,000 refund to a client after complaints about the quality of food and service delivered by the kitchen during a large banquet event.  Def. Stmt. at ¶ 31.  Chef Pimentel was not present during that event and therefore was not supervising the staff that worked it.  *Id.*  On June 27, 2018, Mr. Schwartz (who replaced Mr. Sadutto as Chef Pimentel's direct supervisor) and Mr. McCallum placed Chef Pimentel on a performance improvement plan ("PIP").  *Id.* at ¶ 32.  The PIP required demonstrated improvement in kitchen cleanliness, banquet event preparedness, and proper schedule forecasts.  ECF No. 54–3 at p. 58–61.  Thereafter, Chef Pimentel failed to report to work for his scheduled shifts on the following days: July 8, July 11, July 12, July 13, and July 14.  *Id.* at ¶¶ 33-35.  Chef Pimentel alleges that Mr. Schwartz informally gave Chef the time off as a result of a family emergency.  Pimentel Dep., 171:3–15.  However, it is undisputed that Chef Pimentel received three written warnings on July 26, 2018, for his absence from work on July 12, July 13, and July 14.  *Id.* at ¶ 36.

On July 19, 2018, Atrium's new Food & Beverage Director, Mr. Schwartz, approached Chef Pimentel from behind, squeezed his nipples, rubbed his belly, and said "let's carve this little piggy."  Am. Compl. at Second Count, ¶ 12.  The parties do not agree as to whether this incident ever occurred, or whether Chef Pimentel reported Mr. Schwartz's conduct to Mr. McCallum.

On July 30, 2018, Chef Pimentel was required to attend a planning meeting for a 700-person guest event but failed to attend.  *Id.* at ¶ 42.  Chef Pimentel disagrees that he

was required to attend, and that Atrium used this meeting as a pretext to terminate him. Pl. Stmt. at ¶ 42.  Atrium was required to refund the client for the event because Chef Pimentel did not order sufficient food supplies.  *Id.* at ¶ 43.  On July 31, 2018, Chef Pimentel failed to complete performance reviews that were due for his staff, despite being reminded of the July 31 deadline by Mr. Schwartz via his emails on July 25 and July 30. *Id.* at ¶¶ 39–41.  On August 1, 2018, Chef Pimentel failed to report to work and did not request time off.  *Id.* at ¶ 44.  Ultimately, Atrium terminated Chef Pimentel on August 3, 2018, for failure to abide by his PIP, failure to prepare employee performance reviews, failure to adhere to the company's attendance policy, and for his inadequate preparation for the August 2, 2018, event.  *Id.* at ¶ 45.  Chef Pimentel disagrees with and denies the claims regarding his absences and shortcomings from July and August, 2018, insofar as he alleges that his termination was based upon pretextual reasons, and he explains that his August 1, 2018, absence was when he was in Colombia.  Pl. Stmt. at ¶¶ 42–46. However, he admits being told that Atrium had to issue a refund to its client from late July. Pimentel Dep., ECF No. 54-4, 180:2–7.

      a)    <u>Atrium's Policy</u>

Atrium maintains an Anti-Discrimination and Harassment policy.  Def. Stmt. at ¶ 7. The policy contains a procedure for reporting complaints, and states that complaints will be investigated.  *Id.*  Specifically, the policy includes an anonymous 24-hour hotline call number for employees to report discrimination or harassment.  ECF No. 54-3 at 15–16. The policy also provides employees with the option of submitting a report directly to an immediate manager or supervisor, a human resources representative, a general manager, or a corporate human resources representative.  *Id.* at 16.  Chef Pimentel

signed an acknowledgement stating he received and reviewed the policy and was aware of his ability to report allegations of harassment and retaliation.  Def.'s Stmt. at ¶ 8.


## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*  The court must disregard all evidence favorable to the moving party that the jury is not required to believe.  *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."  *Id.* (citing Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'"  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d

Cir.1986)).   Instead, the party opposing summary judgment must set forth in their response "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 243.  "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted."  *Brown*, 654 F.3d at 358 (internal quotation marks omitted).

At the summary judgment stage, the judge's function is "not to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue" of material fact for trial.  *Anderson*., 477 U.S. at 249.  The substantive law will identify which facts are material, and only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment.  *Id.* at 248. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *See Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir. 2000).

III.   **DISCUSSION**

a)   Hostile Work Environment Claim

Sexual harassment in the workplace is a form of sex discrimination that violates Title VII of the Civil Rights Act of 1964.  *See* 42 U.S.C.  2000e2(a)(1).  Title VII prohibits an employer from discriminating against any individual on the basis of sex, with respect to the compensation, terms, conditions, or privileges of employment.  *Id.*  The Supreme Court previously has recognized that sex discrimination under Title VII includes workplace sexual harassment.  *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)

("Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex.") (internal quotation omitted).  To prevail on a hostile work environment claim arising from sexual harassment, a plaintiff must show that the misconduct was both objectively and subjectively severe or pervasive, that the harassment occurred because of the plaintiff's sex, and that the harassment may be imputed to the employer.  *Barrett-Browning v. Dep't of Corr.*, No. 3:18-cv-01732 (JAM), 2020 U.S. Dist. LEXIS 157232, at *10 (D. Conn. Aug. 31, 2020).

Atrium argues that it is entitled to summary judgment on Chef Pimentel's hostile work environment claim because (1) he cannot impute liability to Atrium under the *Faragher/Ellerth* defense, (2) he has failed to show that the misconduct at issue is either severe or pervasive, and (3) because he cannot establish that the alleged harassment was "because of" his sex.  For the reasons stated below, the court hereby **DENIES** summary judgment with respect to Plaintiff's hostile work environment claim arising from the actions of Mr. Schwartz.  However, Atrium is entitled to summary judgment with respect to a hostile work environment claim arising from the actions of Mr. Sadutto.

i.   *Imputing Liability to Atrium*

Atrium invokes the *Faragher/Ellerth* defense in arguing that Chef Pimentel cannot establish a basis to impute liability of a hostile work environment claim to Atrium.  The court finds that Atrium is entitled the defense with respect to the alleged harassment from Mr. Sadutto, but not for the alleged harassment from Mr. Schwartz.

Under *Faragher* and *Ellerth*, an employer is presumed liable for the sexual harassment of an employee by their supervisor.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 764 (1998).  However,

an employer may have recourse to the *Faragher/Ellerth* affirmative defense if the employer (1) "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and if (2) the plaintiff employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer," or the employee complained, and the employer took "prompt and appropriate corrective action." *Van Alstyne v. Ackerley Grp.*, 8 F. App'x 147, 152 (2d Cir. 2001) (internal citations omitted). The question, on summary judgment, is whether reasonable jurors could disagree about whether an employer's responses were so "effectively remedial and prompt" as to shield it from liability as a matter of law. *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 442 (2d Cir. 1999).

   *Mr. Sadutto's Conduct*

   Chef Pimentel alleges that Mr. Sadutto, his direct supervisor, attempted to shove a cucumber up Chef Pimentel's buttocks (the "cucumber incident"), squeezed his nipples, pinched his buttocks, and called him "sweetheart" during work. Pimentel Dep., 193:24–194:3. Because Chef Pimentel's harassment came from his direct supervisor, Atrium is presumed liable for the conduct as the employer. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 764. However, there is no doubt that Atrium is entitled to the *Faragher/Ellerth* defense because it took "prompt and appropriate corrective reaction" in response to Chef Pimentel's report of harassment. *Van Alstyne v. Ackerley Grp.*, 8 F. App'x 147, 153 (2d Cir. 2001). The parties do not dispute that after Chef Pimentel informed Atrium of the harassment, Atrium investigated the claims against Mr. Sadutto, suspended and terminated him, and thereafter instituted a sexual harassment training for its employees.

Chef Pimentel suggests that it was unreasonable for Atrium to delay an investigation into Mr. Sadutto until after he had retained an attorney. *See* Pimentel Dep, 75:13–20. The record, however, indicates that no such delay exists. Although Chef Pimentel initially reported the cucumber incident to human resources on September 11, 2017, Atrium's records show that, during the meeting with human resources, Chef Pimentel described the incident as "just a joke" and that he was not upset by it. Nearly a month later, at a follow up meeting on November 8, Chef Pimentel reported to human resources that things had improved with Mr. Sadutto. Such representations from Chef Pimentel are insufficient to give notice to Atrium of an actual sexual harassment complaint against Mr. Sadutto. In fact, when Atrium did eventually receive notice of a complaint about Mr. Sadutto, through a December 8, 2017 letter from Chef Pimentel's attorney, Atrium promptly took action. Human resources held a meeting on December 13, 2017, and informed Mr. Sadutto that he was suspended pending an investigation. Ultimately, Mr. Sadutto was terminated. Atrium then conducted a mandatory two-session harassment avoidance training for all supervisors. Courts often have granted summary judgment to employers who have demonstrated similar, immediate investigative action upon the receipt of a plaintiff employee's complaint of sexual harassment. *See e.g. Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997) (prompt and corrective action found where employer conducted a same-day investigation of harassment, confronted the employees of harassment, and issued a warning that harassment would not be tolerated); *Van Alstyne v. Ackerley Grp.*, 8 F. App'x 147, 153 (2d Cir. 2001) (no genuine dispute that the defendant employer took immediate and effective corrective action by investigating complaint and asking supervisor to resign); *Negron v. Ulster Cty.*, No. 1:08-CV-692

(FJS/RFT), 2012 U.S. Dist. LEXIS 117142, at *8 (N.D.N.Y. Aug. 20, 2012) (noting that defendant employer acted promptly, investigated the claim, and ultimately terminated harasser's employment).  Given the undisputed facts in the record, no reasonable jury could find that Atrium failed to exercise reasonable care in correcting harassing behavior. The court finds, as a matter of law, that Atrium is shielded from liability arising from Mr. Sadutto's alleged harassment of Chef Pimentel.

*Mr. Schwartz's Conduct*

The court finds that there exists a genuine dispute of material fact with respect to imputing liability to Atrium based on Mr. Schwartz's actions.   Mr. Schwartz, Chef Pimentel's supervisor who replaced Mr. Sadutto after his termination, repeatedly pinched Chef Pimentel's buttocks, squeezed his nipples, and, at a large media event, rubbed his body against Plaintiff's (from behind), squeezed his nipples, rubbed his belly, and said, "Let's carve this little piggy" just before Chef Pimentel was about to carve a roast pig (the "little piggy" incident).  Pimentel Dep., 203:4–24.

Atrium argues that Chef Pimentel cannot impute liability to it based on Mr. Schwartz's conduct, because Plaintiff "failed to reasonably avail himself of Atrium's preventative measures" in that he "never reported Schwartz's alleged misconduct."  Def. MSJ Memo, ECF No. 54-1, at 22.  However, Chef Pimentel testified at his deposition that he complained to Mr. McCallum (the general manager of the Hilton Stamford, and Mr. Schwartz's direct supervisor) about the "little piggy" incident by explaining that Mr. Schwartz placed his body against Chef Pimentel's and that he made the pig carving comment; Pimentel Dep., 206:16–207; though Chef Pimentel admittedly did not believe that he reported having had his nipples grabbed.  *Id.* at 207:11–13.  On the other hand,

Mr. McCallum represented in his affidavit that "[a]t no point did [Chef] Pimentel accuse [Mr.] Schwartz of harassment or retaliation" and he "[did] not recall" Plaintiff ever mentioning to him that Mr. Schwartz inappropriately had touched him, nor that he had been called "little piggy."  McCallum Aff. ¶ 7.

Atrium argues that even if it accepts Chef Pimentel's allegation that he reported the conduct, Chef Pimentel still failed to avail himself of Atrium's reporting policies.  Def. MSJ Memo at 22.  However, Atrium's Anti-Harassment and Discrimination policy states that if an individual believes they are being harassed, they can report concerns to a General Manager.  Mr. McCallum was the General Manager of the Hilton Stamford, and while Plaintiff may have withheld specificity, Chef Pimentel alleges that he told Mr. McCallum that Mr. Schwartz "put his body against mine" and said, "Let's carve this little piggy."  Pimentel Dep., 207:6–13.  Thus, accepting Plaintiff's allegations as true, Plaintiff acted in accordance with the policy.  Moreover, this factual dispute properly should be resolved by the trier of facts at trial and not by the court in a ruling on a motion for summary judgment.

## ii.  *Severe and Pervasive Conduct*

"To survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment."  *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).  "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and

abusive." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (citing *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).

"As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374. However, it is well-settled within the Second Circuit that "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* (listing cases). The Supreme Court has established a "non-exclusive list of factors" to evaluate whether the misconduct at issue is sufficiently severe or pervasive: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Atrium has moved for summary judgment on the grounds that Chef Pimentel's hostile work environment claim is neither objectively severe nor pervasive. Because Atrium is entitled to the *Faragher/Ellerth* defense with respect to Mr. Sadutto's conduct, the court will only address whether Mr. Schwartz's misconduct satisfies the "severe or pervasive" standard for hostile work environment claims.[1]

---

[1] The remaining allegations in the Complaint identified as sexual harassment—cutting kitchen staff and payroll, scheduling issues caused by Mr. Sadutto—are clearly not instances of gender-based sexual harassment, as admitted by Chef Pimentel in his deposition. Pimentel Dep. 187:15–197:6. Accordingly, the court will not analyze these other incidents in reviewing the hostile work environment claim.

Chef Pimentel testified that his direct supervisor, Mr. Schwartz, repeatedly touched him in inappropriate ways.  At his deposition, Chef Pimentel stated that Mr. Schwartz would pinch his nipples, Pimentel Dep., 187:8–13, and on one occasion, inappropriately squeezed his nipples at a media event, rubbed Plaintiff's stomach, and said "let's carve this little piggy" before Chef had to carve a roast pig at the media event.  *Id.* at 203:3–25.

Atrium argues that the social context of the misconduct must be considered because the conduct at issue involves "inappropriate jokes . . . directly related to the circumstances of a commercial kitchen[.]"  The court recognizes the general principle that sexual harassment in one context may not be considered as such in another context. *See Oncale*, 523 U.S. at 81 (distinguishing between a football coach smacking a player on the buttock on his way to the field versus smacking his secretary back at the office). However, the mere fact that certain behavior may be attributed to the social norms of working in a commercial kitchen does not foreclose the possibility that the same behavior also may constitute severe or pervasive harassment.  The Second Circuit has recognized that "[t]he repeated touching of intimate parts of an unconsenting employee's body is by its nature severely intrusive and cannot properly be characterized as abuse that is 'minor.'"  *Redd*, 678 F.3d at 179.  Chef Pimentel testified that Mr. Schwartz repeatedly pinched his nipples and touched his buttocks—both of which are intimate parts of the body.  Pimentel Dep., 203:18–24.  Moreover, while Atrium characterizes Mr. Schwartz's behavior as limited to the "little piggy" incident", Chef Pimentel testified of Mr. Schwartz that, "[f]rom the very beginning he was very frisky."   *Id.* at 203:23–24.

While "simple teasing or roughhousing among members of the same sex" may not constitute discriminatory conditions of employment, *Oncale*, 523 U.S. at 82, common

sense dictates that squeezing a person's nipples at a large media event – even if intended to be a joke – is sufficient conduct for a reasonable person in the plaintiff's position to find hostile or abusive.  Indeed, "[w]hen entering a workplace, reasonable people expect to have their autonomy circumscribed in a number of ways; but giving up control over who can touch their bod[ies] is usually not one of them."  *Redd v. N.Y. State Div. of Parole*, 678 at 179 (quoting *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006)). Courts in this circuit have likewise denied summary judgment where the conduct involved similar unconsented, intimate touching.  *See e.g., Burke v. Villa, No. 19-CV-2957* (NGG) (RER), 2021 U.S. Dist. LEXIS 229273, at *17 (E.D.N.Y. Nov. 30, 2021) (rejecting the argument that pinching buttocks could be considered "common horseplay . . . in the cramped confines of a busy kitchen")*; Salen v. Blackburn Bldg. Servs., LLC*, No. 3:14-cv-01361-VAB, 2017 U.S. Dist. LEXIS 2051, at *23 (D. Conn. Jan. 6, 2017) (recognizing that brief touching of penis followed by teasing is more than "ordinary socializing in the workplace" or "male-on-male horseplay"); *Ayers v. Conn. Judicial Branch*, No. 3:99cv935(AHN), 2002 U.S. Dist. LEXIS 26108, at *7 (D. Conn. Mar. 28, 2002) (holding that a single incident of striking plaintiff on her buttocks could be sufficient to support a finding of a hostile work environment).

A reasonable jury could find that the conduct experienced by Chef Pimentel— including repeated pinching of the buttocks and squeezing of the nipples—contributed to an objectively hostile or abusive work environment.

To the extent that Atrium argues that Chef Pimentel cannot satisfy the subjective component of his hostile work environment claim, that argument also fails.  Chef Pimentel testified that he "was disgusted" with respect to the "little piggy" incident.  Pimentel Dep.,

205:22–23.  Contrary to Atrium's claims, Chef Pimentel has presented sufficient evidence that he subjectively perceived the misconduct as severe or pervasive.  A reasonable jury could conclude that the conduct directed toward Chef Pimentel—including the repeated touching of intimate body parts—is both objectively and subjectively severe enough behavior so as to alter the conditions of his employment at the Stamford Hilton and to create an abusive working environment.

> iii.    *Harassment Because Of Sex*

In addition to showing objectively/subjectively severe or pervasive conduct, a plaintiff also "must establish that the hostile or abusive treatment was because of his or her sex."  *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012).  The Supreme Court has recognized that same-sex sexual harassment is actionable under Title VII's prohibition against "discrimination . . . because of . . . sex".  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998).  The *Oncale* court described three possible ways in which a plaintiff may prove that same-sex harassment occurred "because of sex."  *Id.* at 78.  A plaintiff may (1) provide credible evidence that the harasser was homosexual; (2) demonstrate that the harasser was motivated by general hostility to the presence of women or men in the workplace, or (3) offer direct, comparative evidence about how the alleged harasser treated members of both sexes differently in a mixed-sex workplace.  *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998).  Courts in this circuit also have recognized that a plaintiff may demonstrate that same-sex discrimination arises "because of sex" if the harassment is the result of gender stereotyping.  *See, e.g., Cloutier v. Ledyard Bd. of Educ.*, No. 3:20cv1690 (JBA), 2021 U.S. Dist. LEXIS 241046, at *18 (D. Conn. Dec. 17, 2021) (noting that discrimination on

18

the basis of sex may be inferred where a man is punished for straying from gender norms).

"[T]he question of whether considerations of the plaintiff's sex *caused* the conduct at issue often requires an assessment of individuals' motivations and state of mind.  Issues of causation, intent, and motivation are questions of fact. . . . [and] summary judgment should be used sparingly[.]"  *Redd v. New York Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) (internal citations omitted).  Courts have recognized that repeatedly behaving in a sexualized manner, or frequently touching a plaintiff's intimate body parts, may lead a reasonable jury to conclude that a same-sex harasser's misconduct was sexually motivated.  *See Rodriguez v. City of Danbury*, No. 3:15-cv-01269 (RNC), 2019 U.S. Dist. LEXIS 170760, at *44 (D. Conn. Sep. 30, 2019); *Deprey v. FedEx Freight, Inc.*, No. 3:18-CV-102-MPS, 2020 U.S. Dist. LEXIS 61754, at *13 (D. Conn. Apr. 8, 2020).  In both *Rodriguez* and *Deprey*, the court held that repeated conduct of a sexual nature, such as a defendant's repeated groping and humping in *Rodriguez*, or the sexually charged comments from co-workers in *Deprey*, was sufficient to create a triable issue as to whether the harassers were motivated by a sexual desire.  And in *Rodriguez*, the harasser was not alleged to have been homosexual.  The Second Circuit likewise has recognized that frequently touching sex-related body parts could contribute to a reasonable jury's ultimate conclusion that the alleged harassment was motivated by the victim's sex.  *Barrows v. Seneca Foods Corp.*, 512 F. App'x 115, 118 (2d Cir. 2013) (holding that a male supervisor's alleged misconduct was "sex-specific" in part because "he frequently touched male-specific (and sex-related) body parts").

Admittedly, whether Chef Pimentel's alleged harassment from Mr. Schwartz constitutes discrimination "because of sex" is a close call.  Nobody in any civilized workplace should be subjected to the conduct alleged by the Plaintiff.  Chef Pimentel has not presented any evidence to demonstrate that Mr. Schwartz carries a general hostility towards men in the workplace – nor is there any comparative evidence to indicate how men and women were treated differently.  For example, Plaintiff has not testified that women were immune to the repeated vulgar touching by Mr. Schwartz.  Further, Plaintiff does not know Mr. Schwartz's sexual preferences.  Pimentel Dep., 206:5–10.  Together, these factors challenge the reasonableness of any claim that the alleged misconduct was due to the sex or the sexuality of the plaintiff.  And unlike the "sweetheart" comment attributed to Mr. Sadutto, the physical conduct of Mr. Schwartz was coupled with non-sexualized verbiage (about carving a little piggy) that, while susceptible to a reasonable jury finding that it constitutes harassment, nevertheless bears no apparent relation to the plaintiff's sex or sexuality.  Therefore, the present facts are distinguishable from those in *Deprey*, in which the plaintiff claimed sex-based vulgarities targeting men, discrimination likely due to gender nonconformity, and defendants who photographed the penis of an older gentleman.  *Deprey v. FedEx Freight, Inc.*, No. 3:18-CV-102-MPS, 2020 U.S. Dist. LEXIS 61754 at *15–*18 (D. Conn. Apr. 8, 2020).

Moreover, sexual harassment cases appear to contain a subjective element applicable to the requirement that the alleged misconduct be due to the sex of the plaintiff.  In *Kaytor v. Electric Boat Corp.*, 609 F.3d 537 (2d Cir. 2010), it was suggested that a judge must weigh the totality of the evidence in a light most favorable to the plaintiff in determining whether the plaintiff can show, "both subjectively and objectively, that

20

because of her gender" she faced the alleged harassment.  *Id.* at 551; *see also Harris v. N.Y. State Dep't of Corr. Servs.*, No. 1:11-cv-1066 (GLS/CFH), 2014 U.S. Dist. LEXIS 76453, at *12 (N.D.N.Y. June 5, 2014) (noting that Plaintiff's own testimony that she "did not believe [the] harassment was a result of gender" may establish that the harassing conduct was not motivated by gender). Thus, the subjective view of the plaintiff that the harassment was based on sex or gender may be considered by the court.

Said another way, the court, with all deference to the claims of the plaintiff, may determine whether Chef Pimentel believes that the actions of Mr. Schwartz were based on Chef Pimentel's sex.  As when assessing the apparent intent of the accused, this court exercises great caution before considering whether to grant summary judgment rather than to defer to the trier of fact in assessing the plaintiff's subjective belief.  In this case, Plaintiff conceded as to Mr. Sadutto that he "would have choked him" had he perceived Mr. Sadutto's actions to have amounted to a romantic or a sexual proposition.  Pimentel Dep., 192:1–6.  Chef Pimentel also conceded that he did not react with violence to Mr. Sadutto's actions; *id.* at 192: 7–9; which tends to suggest that he did not view them as an advance.  Similarly, his lack of violence toward Mr. Schwartz would imply that Plaintiff subjectively did not find Mr. Schwartz's conduct to be motivated by sex or by sexuality. Likewise, there is no specific claim that the actions of Mr. Schwartz were due to gender nonconforming behavior by Chef Pimentel.  If anything, it is the conduct attributed to Mr. Schwartz that would appear to be more gender nonconforming than the comments and actions of Chef Pimentel.  However, in the end, Plaintiff recalled that Mr. Schwartz, "From the very beginning…was very frisky."  *Id.* at 203:23–24.  When asked whether he thought

the "piggy incident" was gender related, he responded, "I don't know" and "I don't know what his sexual preferences are."  *Id.* at 206:7–10.

Viewing the evidence in the light most favorable to Plaintiff, the court concludes that a jury reasonably could find that the conduct was gender-based.  As in *Rodriguez* and *Deprey*, the misconduct involves repeated behavior that a reasonable person could perceive as sexual.   Chef Pimentel testified that the pinching of his buttocks and squeezing of his nipples happened on more than one occasion from Mr. Schwartz. Pimentel Dep., 203:3–25.  The nature of the repeated touching of intimate body parts is enough to suggest that there is at least a triable issue of fact as to the motivations held by Mr. Schwartz, especially without an admission to the contrary (that Plaintiff did not find the conduct to be of a sexual nature, or to target him because of his sex or his gender).

    b)    <u>Retaliation Claim</u>

Title VII makes it unlawful "for an employer to discriminate against any . . . employee[ ] . . . because [that employee] opposed any practice" made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019). Retaliation claims are analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973).  Step one of the framework requires a plaintiff to establish a prima facie case "by showing (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Lenzi*, 944 F.3d at 112 (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  The plaintiff's burden in this regard is "de minimis," and "the court's role in evaluating a summary judgment request is to determine only whether

proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.*

If the plaintiff meets the initial burden of showing a prima facie case of retaliation, "a presumption of retaliation arises," and the defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* "The defendant's burden also is light." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Id.* (emphasis in original). "The burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). The burden then shifts back to the plaintiff to "demonstrate by competent evidence" that the reasons offered were "a pretext for discrimination." *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 255, n. 10 (1981).

The court finds that while Chef Pimentel presented a prima facie case of retaliation under the *McDonnel/Douglas* burden shifting framework, he has failed to rebut Atrium's legitimate, non-retaliatory reasons for his ultimate termination. Accordingly, Atrium's motion for summary judgment with respect to Plaintiff's retaliation claim hereby is **GRANTED**.

      i.   *Prima Facie Case*

Chef Pimentel alleges that Atrium retaliated against him after he reported Mr. Sadutto and Mr. Schwartz for sexual harassment. Specifically, he alleges that after reporting his supervisors, Atrium (1) eliminated his managerial responsibility to hire and

fire staff; (2) issued multiple warnings as a pretext to his ultimate termination; (3) put him on a Performance Improvement Plan ("PIP"); and (4) terminated him.

There is no doubt that Chef Pimentel engaged in protected activity under Title VII. Protected activity includes "any activity designed 'to resist or antagonize . . .; to contend against; to confront; . . . [or] withstand' discrimination prohibited by Title VII[.]" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 317 (2d Cir. 2015) (citing *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 276 (2009)). Chef Pimentel engaged in protected activity by reporting Mr. Sadutto's misconduct to Atrium in December 2017, by filing a CHRO complaint in March 2018, and by reporting the little piggy incident to Mr. McCallum in July 2018. Atrium contends that the report to Mr. McCallum is not "protected activity" because Chef Pimentel "did not mention…his allegation that Schwartz touched his nipples or rubbed [his] belly" when reporting that claim. However, Chef Pimentel testified that he specifically told Mr. McCallum that Mr. Schwartz approached Chef Pimentel from behind and put his body up against him. Pimentel Dep., 207:6–13. Such a report is sufficient activity designed "to resist . . . [or] to confront" against discrimination prohibited by Title VII, *Littlejohn*, 795 F.3d 317, and "reasonably" could lead Atrium to understand that Plaintiff viewed Mr. Schwartz's actions as based on his gender. *Compare Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (finding no retaliation where the employee's complaints in no way intimated that she believed harasser's conduct to be influenced by gender). It is undisputed that Atrium's General Manager, Mr. Langevin, knew of the protected activity, given that Mr. Langevin suspended Mr. Sadutto after Chef Pimentel complained about him.

After a plaintiff demonstrates participation in a protected activity, the plaintiff must show that they suffered an adverse employment action. *Hicks*, 593 F.3d at 164.  It is undisputed that the following actions were taken after Chef Pimentel's protected activity: the written warning regarding expired food, dated January 16, 2018; the verbal warning regarding Chef Pimentel's failure to complete his performance reviews, dated January 18, 2018; the decision to put Chef Pimentel on a Performance Improvement Plan ("PIP"), dated June 22, 2018, and Atrium's termination of Chef Pimentel in August 2018.  Chef Pimentel must demonstrate that such employment actions were "adverse."

The written warning dated January 16, 2018, the verbal warning dated January 18, 2018, and Chef Pimentel's ultimate termination – are all sufficient to constitute adverse employment actions.  "A formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment; it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy."  *Millea v. Metro-North R.R.*, 658 F.3d 154, 165 (2d Cir. 2011).  Chef Pimentel testified that the written warning dated January 16, 2018 was issued after an inspection had revealed over $8,000 of expired food in his kitchen.  However, the warning was issued only after Chef had already notified Atrium that, at the time the food was delivered, it should be sent back because the expiration dates were too short.  *See* Pimentel Dep., 138: 10–19.  Under the circumstances, a reasonable person could have perceived the written warning "as an alien and ominous threat, sufficient to dissuade [him] from further pushing back against discrimination in the workplace."  *Bosse v. Connecticut*, No. 3:20-CV-00760 (JCH), 2021 U.S. Dist. LEXIS 250176, at *25 (D. Conn. Aug. 3, 2021) (employer's written reprimand constituted adverse

employment action). The same is true for the verbal warning issued by Atrium on January 18, 2018. This warning was issued as a result of Chef Pimentel's failures to complete annual performance reviews for his staff. The warning specifically states that continued failure to maintain satisfactory job performance may result in further disciplinary action, up to and including termination. The court finds it difficult to interpret this warning as unrelated to the terms and conditions of Chef Pimentel's employment at the Hilton Stamford.

Atrium's decision to put Chef Pimentel on a PIP, however, cannot be considered retaliatory because it is not an "adverse employment action" under Title VII. The PIP instructed Chef Pimentel to keep his kitchen clean so that it passes the next health inspection; to be prepared for banquet events; to complete staff schedules in advance; and to improve "SALT" scores as to food quality and restaurant satisfaction. Chef Pimentel attached an addendum to the PIP stating that "a good deal of the PIP memo is devoted to things that I would accomplish in the normal course." ECF No. 54-3 at p. 62. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Chef Pimentel's own addendum admits that the PIP is devoted to his routine job responsibilities. Thus, there was no "materially adverse change" to his employment that would transform the PIP into an "adverse employment action." *See Brown v. Am. Golf*

*Corp.*, 99 F. App'x 341, 343 (2d Cir. 2004) (merely being instructed to follow the requirements of a PIP does not constitute an adverse employment action); *see also Craig v. Conn. Dep't of Mental Health & Addiction Servs.*, No. 3:16-CV-2100 (JCH), 2017 U.S. Dist. LEXIS 195555, at *20 (D. Conn. Nov. 28, 2017) (holding that a PIP "is not an adverse employment action insofar as it requires an employee to follow certain requirements"). Plaintiff claims that the PIP is retaliatory because the signature lines do not contain "names of real people involved," and that the notation of "Revised 4.1.2016" indicates that Atrium "took a model of a personnel hatchet job from earlier personnel action by upper management and changed names, and a few things" but otherwise used the PIP as "a formed hatchet job they had done on someone else earlier."   Pl. Opp., ECF No. 63-2 at 5.   The court does not find any evidence within the record to support Plaintiff's claims, which are purely speculative.   The use of a standard form PIP, which undergoes occasional revisions, is not an uncommon practice for large employers and certainly is not an exclusive basis on which to infer retaliation.

A plaintiff alleging retaliation in violation of Title VII also must show that "retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision."   *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845–46 (2d Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).   The plaintiff may prove but-for causation "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action."   *Kwan*, 737 F.3d at 846.   "Summary judgment should be denied [for] an employer where '[t]he record contains enough evidence that, if credited, could support a jury's finding that [the employer's] rationale for [the employee's] treatment and

eventual termination was a pretext for illegal . . . retaliation." *Meyers v. Medco Health Sols., Inc.*, 2015 U.S. Dist. LEXIS 43262, at *14-15 (S.D.N.Y. Mar. 31, 2015).

Chef Pimentel reported Mr. Sadutto in December 2017 and received performance warnings (both written and verbal) in January 2018.  He reported Mr. Schwartz in July 2018 and was terminated in August 2018.  "[T]emporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  However, "temporal proximity is insufficient to satisfy a [plaintiff's] burden to bring forward some evidence of pretext."  *Id.*  Chef Pimentel testified that he does not have "any evidence" as to retaliation other than "the fact that they let [him] go."  Pimentel Dep., 183:25–184:6; *see also* 185:4–8.  For example, Chef Pimentel claims the January 2018 warnings were retaliatory actions from Mr. Langevin, the General Manager of the Hilton, and Ms. Washington, the human resources manager.  However, there is no evidence that these warnings were issued as a pretext for discrimination.  Courts have granted an employer's summary judgment motion where the plaintiff employee relies purely on speculation for a claim of retaliation.  *Jumpp v. Terranova*, No. 3:16-cv-683 (SRU), 2016 U.S. Dist. LEXIS 63996, at *6 (D. Conn. May 16, 2016) ("Because Jumpp has provided no evidence of retaliatory animus beyond his own speculation, however, the retaliation claim is dismissed."); *Lajeunesse v. A&P*, 160 F. Supp. 2d 324, 334 (D. Conn. 2001) ("Absent any other evidence of retaliatory motive, mere temporal proximity is insufficient").

Chef Pimentel has not demonstrated any "weaknesses, implausibilities, inconsistencies or contradictions" in Atrium's proffered legitimate, non-retaliatory reasons

for his discharge.  *Kwan*, 737 F.3d at 846 (summary judgment is inappropriate where employer offers inconsistent explanations for plaintiff's termination).   When Atrium terminated Plaintiff, it informed him that the termination was due to job abandonment. Atrium has maintained this position by demonstrating that Chef Pimentel had repeated unexcused absences immediately prior to his termination, failed to attend and manage large banquet events, and failed to complete performance reviews.   Beyond his own conclusory allegations, Chef Pimentel has not satisfied his burden to "demonstrate by competent evidence" that the reasons offered by Atrium for his discharge merely were "a pretext for discrimination."  *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 255, n. 10 (1981).   Accordingly, Atrium's motion for summary judgment as to the retaliation claim hereby is **<u>GRANTED.</u>**

## IV.    CONCLUSION

Atrium's summary judgment motion is **<u>GRANTED</u>** with respect to Chef Pimentel's retaliation claim.  Atrium's summary judgment motion is **<u>GRANTED</u>** with respect to Chef Pimentel's hostile work environment claim arising from Mr. Sadutto's actions, and is **<u>DENIED</u>** with respect to the hostile work environment claim arising from Mr. Schwartz's actions.  Within 14 days of this ruling, the parties shall file a joint status report indicating the following:

- The estimated length of trial;
- Whether the parties are interested in a referral to a United States Magistrate Judge for a settlement conference.

After receiving the parties' joint status report, the court will refer the case to a Magistrate Judge as requested or, in the alternative, schedule the matter for trial and issue instructions and deadlines for the joint trial memorandum and all remaining pretrial motions.

**IT IS SO ORDERED.**  Entered at Hartford, Connecticut, this 7th day of September, 2022.

*/s/ Omar A. Williams*
Omar A. Williams
United States District Judge